# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAJAT KUMAR PAL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )      **Case No. CIV-26-528-J** |
| | ) |
| ACTING FIELD OFFICE DIRECTOR, | ) |
| et al., | ) |
| | ) |
| Respondents. | ) |

## REPORT AND RECOMMENDATION

Petitioner Rajat Kumar Pal, a citizen of India proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Bernard M. Jones, II, referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 3). In accordance with the briefing schedule, (Doc. 9), Respondents timely filed a response.[3] (Doc. 16). Petitioner timely filed a reply. (Doc. 13). As fully set forth below,

---

[1] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 1, at 3; *id*. at Ex. 5 at 1).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] Respondents originally filed their response on April 7, 2026, (Doc. 11), and then amended their response to include exhibits the same day, (Doc. 12). After getting leave of Court, Respondents then filed a second amended response, (Doc. 16), to correct errors in the amended response. The undersigned refers to the second amended response throughout this Report and Recommendation. Additionally, none of the responses were filed on behalf

1

the undersigned recommends that Petition be **GRANTED** in part.  Petitioner is entitled to a bond hearing and, because Petitioner's due process rights have been violated, the Court should order Respondents to provide Petitioner with a bond hearing at which the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention.

I.    **Introduction to the Immigration and Nationality Act**

The two sections of the Immigration and Nationality Act ("INA") at issue are 8 U.S.C. § 1225 and § 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."  *Id.* § 1225(a)(1) (citation modified).  The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13).  Under § 1225(b)(2)(A), "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."  (Emphasis added).  In other words, the alien is subject to mandatory detention while he awaits removal proceedings.

On the other hand, § 1226(a) authorizes detention of an alien "on a warrant issued

---

of Respondent Scarlet Grant, Warden of the Cimarron Correctional Facility, because she is not a federal official.  (Doc. 16, at 9 n.3).  The undersigned concludes that a separate response from Warden Grant is not necessary to resolve this matter.

by the Attorney General." *Id.* § 1226(a) (citation modified).  An alien detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he should be released while he awaits removal proceedings because he is not a danger to others or at risk for non-appearance.  *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Accordingly, if Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he must be detained and is not entitled to a bond hearing.  If he is not an "applicant for admission" and "seeking admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing and potentially release.

For many years, Immigration Judges applying the INA provided bond hearings for aliens who had entered the country without inspection or admission and were later apprehended and detained by ICE.  *See Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216, 225 n.6 (BIA 2025) ("*Hurtado*").  But on September 5, 2025, the Board of Immigration Appeals ("BIA") determined that an immigration judge does not have authority to hear a request for bond by an alien present in the United States who has not been admitted after inspection because the alien was "subject to mandatory detention" under § 1225.  *Id.* at 229.  This change in interpretation of the INA has led to a nationwide influx of habeas corpus petitions seeking bond hearings for aliens who were recently detained after living for years in the United States without inspection or admission.

## II.    Factual Background

Petitioner is a citizen of India who entered the United States at or near San Luis, Arizona, without admission or inspection on or about April 23, 2022.  (Doc. 1, at 4; *id*. at Ex. 2 at 2).  The next day, ICE instituted removal proceedings against him through issuance of a Notice to Appear ("NTA"), alleging he was an alien present in the United States who had not been admitted or paroled.  (*Id*. at Ex. 1).  On or about April 24, 2022, Petitioner was released from ICE custody on his own recognizance. (Doc. 1, at 4, 13; Doc. 16, at Ex. 2).  At some point during his removal proceedings, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal, which was amended or updated multiple times.  (Doc. 16, at Exs. 3-6).  Petitioner also obtained authorization to work. (Doc. 1, at 5; *id*. at Ex. 3).

On February 27, 2026, Petitioner was taken into ICE custody following a routine traffic stop.  (Doc. 1, at 5; Doc. 16, at 16).  Petitioner asserts that he was not advised of any violations of his release conditions and that he has not been afforded a bond hearing.  (Doc. 1, at 10, 12).  Petitioner alleges he has complied with all conditions of his release.  (*Id*. at 5, 10).  Respondents assert that Petitioner is subject to mandatory detention under § 1225(b)(2)(A).  (Doc. 16, at 9, 12, 21-23).  Petitioner's removal proceeding is ongoing. (Doc. 1, at 5).

## III.    Petitioner's Claims and Respondents' Responses

In Count I, Petitioner alleges that his due process rights under the Fifth Amendment to the Constitution have been violated by his re-detention because "Respondents reversed [his] custodial status without any change in facts, conduct, or circumstances."  (Doc. 1, at

11). He alleges "[s]uch a reversal, without explanation, constitutes arbitrary government action." (*Id*. at 12). Petitioner asserts his arrest and detention "without any individualized custody determination" are therefore "arbitrary and unlawful." (*Id*.)

In Count II, Petitioner alleges a violation of the INA, arguing that his detention is unlawful because § 1225(b)(2)(A) "does not authorize detention of a noncitizen who has been released on his own recognizance into the interior and later arrested during pending removal proceedings." (*Id.* at 13). He asserts that he is only properly subject to detention under § 1226(a). (*Id*.)

As relief Petitioner requests, *inter alia*, immediate release from custody. (*Id*. at 15). Alternatively, he requests that "if the Court concludes that detention may lawfully proceed under 8 U.S.C. § 1226(a), order Respondents to provide [him] with a prompt bond hearing before an Immigration Judge where the Respondents bear the burden of proof." (*Id*.)

Respondents contend that (1) Petitioner's statutory claim is jurisdictionally barred, (Doc. 16 at 18-21); (2) Petitioner is lawfully detained under § 1225(b)(2)(A), (*id*. at 21-23); and (3) Petitioner's due process claim is premature and baseless, (*id*. at 23-28).

## IV.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## V.    Analysis

### A.    The Court Has Jurisdiction To Consider the Petition.

Respondents first argue this Court lacks jurisdiction to consider Petitioner's claims, based on 8 U.S.C. §§ 1252(g) and 1252(b)(9).  (Doc. 16, at 18-21).  However, Judges of this District have consistently ruled the INA "does not jurisdictionally bar" a habeas claim like Petitioner's because such a claim does not arise from and "does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders." *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *2 (W.D. Okla. Dec. 16, 2025); *see also Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026) (same); *Alvarado Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *4-5 (W.D. Okla. Dec. 26, 2025) (same); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025) (same); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *2 (W.D. Okla. Dec. 8, 2025) (same); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at *1 (W.D. Okla. Jan. 20, 2026) (same).  *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026) (expressing "grave doubts over whether it has subject matter jurisdiction" but assuming it had jurisdiction to proceed to the merits).  The undersigned agrees with the majority of Judges of this District in finding that jurisdiction exists to consider Petitioner's habeas challenge to detention.

**B.    The Undersigned Agrees With the Majority of this District Court that the Detention of Aliens Like Petitioner is Governed by § 1226(a).**

According to Petitioner, his continued detention under § 1225(b)(2)(A) is unlawful and he is entitled to a bond hearing under § 1226(a).  (Doc. 1, at 2, 13).  Respondents contend that because Petitioner did not enter the country lawfully and has not departed, he is still considered an "applicant for admission" who is "seeking admission" and therefore he is properly detained under § 1225(b)(2)(A).  (Doc. 16, at 12; 21-23).

The undersigned agrees with Petitioner.  Indeed, the undersigned has issued more than twenty Reports and Recommendations setting forth a detailed analysis of the statutory text and legislative history of § 1225 and § 1226, a discussion of the BIA's application of the statutes for the past three decades, and comparison to the reasoning of numerous recent cases from both within and outside this District that have considered the same issues.  Central to that analysis is the undersigned's conclusion that for § 1225(b)(2)(A) to apply, the alien must be both an "applicant for admission" and "seeking admission" and that the use of "seeking" "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Damian v. Jones*, No. CIV-25-1561-J, 2026 WL 682545, at *7 (W.D. Okla. Feb. 2, 2026), *report and recommendation adopted*, 2026 WL 446295 (W.D. Okla. Feb. 17, 2026). Thus, the undersigned has consistently concluded that § 1226(a), not § 1225(b)(2)(A), governs the detention of aliens who were apprehended when they were already present in the country without admission, as opposed to arriving at the border.

In response to a growing number of habeas challenges in the Western District of

7

Oklahoma, Chief Judge Palk, Judge DeGiusti, Judge Jones, Judge Russell, and Judge Heaton have repeatedly come to the same conclusion. *See*, *e.g.*, *Colin*, 2025 WL 3645176, at *4-5; *Gonzalez Cortes*, 2026 WL 147435, at *5; *Damian*, 2026 WL 446295, at *2; *Valdez*, 2025 WL 3709021, at *3; *Li*, 2026 WL 147438, at *1.  Accordingly, the Judges have granted habeas relief in the form of bond hearings under § 1226(a).

The Second Circuit Court of Appeals is in agreement, holding that "Petitioner entered the United States unlawfully in 2004 or 2005 and has resided here ever since.  He is therefore deemed to be an 'applicant for admission' by Section 1225(a), but he is not 'seeking admission' because he is not requesting lawful entry into the United States after inspection and authorization. . . . Accordingly, we conclude that Petitioner's detention is governed by Section 1226(a), not Section 1225(b)(2)(A)." *Da Cunha v. Freden*, No. 25-3141-pr (2nd Cir. Apr. 28, 2026).  The Seventh Circuit Court of Appeals has likewise held that "while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025).  Judges in this District have found the Seventh Circuit's analysis to be persuasive. *Maldonado v. Noem*, No. CIV-25-1379-J, 2026 WL 160950, at *1 (W.D. Okla. Jan. 21, 2026); *Valdez*, 2025 WL 3709021, at *2; *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287, at *2 (W.D. Okla. Jan. 23, 2026).[4]

---

[4] In contrast, Judge Dishman and Judge Wyrick in this District have adopted Respondents' position that aliens like Petitioner fall under § 1225(b)(2)(A) and are subject to mandatory

Significant to the instant case, Judges in this District have held that an alien's application for asylum does not render him subject to § 1225(b)(2)(A). *See, e.g.*, *Singh v. Bondi*, No. CIV-26-43-J, 2026 WL 483482, at *2 (W.D. Okla. Feb. 20, 2026) (rejecting Respondents' argument that Petitioner is seeking admission and § 1225(b)(2) therefore applies because he filed a Form I-589 asylum application during his removal proceedings); *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li*, 2026 WL 147438, at *1 (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum").

Moreover, the conclusion that § 1226 governs an alien's recent detention by ICE is only bolstered in cases like the instant one, in which Petitioner was previously detained by ICE and later released on recognizance pursuant to § 1226. (Doc. 1, at 2, 4; Doc. 16, at Ex. 2). *See, e.g.*, *Vielma Uzcategui v. Brooksby*, Case No. 4:26-cv-20-DN-PK, 2026 WL 622751, at *9 (D. Utah Mar. 5, 2026) (finding petitioner was entitled to a bond hearing under § 1226(a) when she had been originally released on her own recognizance under §

---

detention. *See Gutierrez Sosa*, 2026 WL 36344; *Alvarado Montoya*, 2025 WL 3733302. The Fifth and Eighth Circuit Courts of Appeals are in accord. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The undersigned respectfully disagrees with the textual analysis and statutory interpretations by these courts. Several Judges in this District have expressly acknowledged the Fifth and Eighth Circuit rulings but have not altered their analysis. *See Campa v. Johnson*, No. CIV-26-1-HE, 2026 WL 446978, at *1 (W.D. Okla. Feb. 17, 2026); *Abhishek v. Holt*, No. CIV-26-221-SLP, 2026 WL 852091, at *2 & n.6 (W.D Okla. Mar. 27, 2026); *Raj v. Anda-Ybarra*, No. CIV-26-125-D, 2026 WL 852093, at *1 & n.1 (W.D. Okla. Mar. 27, 2026).

1226(a) and then later detained without bond because "[a]s numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later switching tracks to subject her to mandatory detention under § 1225(b)(2). The rule is simple: Sections 1226(a) and 1225(b) cannot be applied simultaneously.") (citation modified); *Bello Chacon v. Hermosillo*, No. 25-CV-2299, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (finding petitioner's prior release on recognizance under § 1226 indicates he "was—and continues to be—subject to discretionary detention under § 1226"); *Chen v. Soto*, No. CV 25-17198, 2025 WL 3527239, at *3 (D.N.J. Dec. 9, 2025) (granting habeas relief and ordering respondents to provide a bond hearing for petitioner previously released on his own recognizance pursuant to § 1226 because previously treating petitioner under § 1226 "defeats respondents' new position that a different statutory provision applies").

Based on the foregoing analysis and the weight of authority in this Court, the undersigned recommends that the Court finds that § 1226(a) governs Petitioner's detention.

**C.      Petitioner's Detention Without a Bond Hearing Violates Procedural Due Process. He Is Entitled To Receive a Bond Hearing with Appropriate Procedural Protections.**

Petitioner alleges that re-detention absent an individualized custody determination violates his due process rights under the Fifth Amendment to the Constitution. (Doc. 1, at 12). The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that the Due Process Clause applies to non-citizens within the United States "whether their presence here is lawful, unlawful, temporary, or

10

permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

### 1.    Due Process Requires that Petitioner Receive a Bond Hearing.

For non-citizens subject to § 1226(a), the INA provides the due process of a bond hearing. As a non-citizen properly classified under § 1226, Petitioner has (1) a protected liberty interest in freedom from immigration detention, and (2) the procedure of the bond hearing as provided in § 1226 is necessary to ensure that deprivation of that protected liberty interest accords with due process. Thus, Petitioner's procedural due process rights have been violated by Respondents' decision to detain him without a bond hearing. As articulated by a district court of this Circuit:

> Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ [immigration judge]. Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight. Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process.

*Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (internal citation omitted); *see also Requejo Roman v. Castro*, No. 2:25-cv-1076-DHU-JHR, --- F. Supp. 3d

11

----, 2026 WL 125681, at *8 (D.N.M. Jan. 12, 2026) ("Because Petitioner is subject to § 1226's discretionary detention provision rather than mandatory detention under § 1225, he is entitled to a bond hearing. Classifying Petitioner under § 1225 has thus deprived him of due process by denying him the opportunity to be heard at such a hearing.") (citations omitted); *Facio v. Baltazar*, No. 25-CV-03592-CYC, 2025 WL 3559128, at *3 (D. Colo. Dec. 12, 2025) ("[T]he Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation. After all, the facts clearly demonstrate that [the petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing regulations.") (citation modified); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. Aug. 29, 2025) ("[T]he Court has specifically held that Section 1226(a) governs Lopez-Campos' detention, therefore the process due to him is that which is afforded under Section 1226(a). The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination – a hearing the IJ did not conduct. Therefore, without first evaluating Lopez-Campos' risk of flight or dangerousness, his detention is a violation of his due process rights.").

Thus, the undersigned recommends that Petitioner be provided a prompt bond hearing under § 1226(a) in order to rectify the violation of his due process rights.

      **2.    Requiring the Government To Justify Detention at the Bond Hearing Reduces the Risk of an Ongoing and Erroneous Deprivation of Petitioner's Liberty.**

Petitioner requests that should the Court conclude a bond hearing under § 1226(a) is warranted, the government should bear the burden of proof. (Doc. 1, at 15). Section

12

1226(a) does not specify who bears the burden of proving a non-citizen's eligibility for bond, but federal regulations suggest "that, under normal circumstances, the burden is on the noncitizen to demonstrate that their 'release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Velasquez Salazar*, 806 F. Supp. 3d at 1241 (quoting 8 C.F.R. § 236.1(c)(8)). "Neither the Supreme Court nor the Tenth Circuit has directly addressed whether the burden of proof should shift when a noncitizen has been unlawfully detained in violation of the Due Process Clause." *Id*. at 1242. However, the First, Second, and Ninth Circuits hold the government must bear the burden of proof to justify a non-citizen's detention pending removal proceedings. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 855-57 (2d Cir. 2020); *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *But see Miranda v. Garland*, 34 F.4th 338, 358-65 (4th Cir. 2022) (concluding due process does not require burden shifting). As set forth fully below, the undersigned finds that this Court has the ability to order habeas relief that is specifically designed to address the type of due process violation presented here and that shifting the burden of proof to the government is the appropriate relief.[5]

---

[5] The undersigned acknowledges this Court's ruling in *Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *2 (W.D. Okla. April 16, 2026), finding the issue of burden shifting "premature" and "not ripe for adjudication" because "[a]t this point in time, no immigration judge has conducted a bond hearing in Petitioner's case, much less allocated the burden of proof or applied the particular facts of this case to that evidentiary framework. Accordingly, the Court declines to issue an advisory opinion instructing the Immigration Judge to apply a particular burden of proof." The undersigned respectfully continues to recommend shifting the burden to the government at the bond hearing.

"Habeas corpus, as the Supreme Court has said, is an adaptable remedy, the precise application and scope of which changes depending upon the circumstances. The equitable and flexible nature of habeas relief also gives the reviewing court considerable latitude to correct errors that occurred during the [prior] proceedings." *Velasco Lopez*, 978 F.3d at 855 (quoting *Boumediene v. Bush*, 553 U.S. 723, 779, 786 (2008)); *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (holding that federal courts have "broad discretion in conditioning a judgment granting habeas relief" and "are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require'"). Moreover, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481. Indeed,

> [t]he power of federal courts to issue injunctions to protect rights guaranteed by the Constitution has long been recognized. *See Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021) (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)). And "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, (1971). It is the "nature of the violation" that "determines the scope of the remedy." *Id.* at 17.

*Velasquez Salazar*, 806 F. Supp. 3d at 1241 (parallel citations omitted).

Courts within the Tenth Circuit and around the country considering habeas petitions have increasingly applied the framework in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the type of process required in immigration detention cases where the Government has unlawfully detained a non-citizen without a bond hearing – often for many months. *See Requejo Roman*, 2026 WL 125681, at *8 (D.N.M. Jan. 12, 2026) ("[U]nder normal circumstances, the burden is on the noncitizen . . . . But these are not normal

14

circumstances. . . . In determining what procedures sufficiently protect due process in the immigration context, courts have applied the [*Mathews*] framework."); *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-881-NYW, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025) ("As for the burden of proof, the Court assesses the type of process required in a given case using the so-called *Mathews* balancing test.") (internal citation omitted); *see also Hernandez-Lara*, 10 F.4th at 28 ("Whether the Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to section 1226(a) to a bond hearing at which the government bears the burden" "is guided by the three-part balancing test articulated in [*Mathews*]."). Here, all three *Mathews* factors support affording a Petitioner a bond hearing at which the Government bears the burden of proof of establishing risk of flight and dangerousness.

The first *Mathews* factor is "the private interest that will be affected." *Mathews*, 424 U.S. at 335. Here, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" interest in the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 687-88. "In our society liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Petitioner's private interest in being free from detention – specifically unlawful detention – is at stake. Thus, the first factor weighs heavily in favor of procedures that carefully protect Petitioner's liberty interest. *See Velasquez Salazar*, 806 F. Supp. 3d at 1243; *Requejo Roman*, 2026 WL 125681, at *9.

The second *Mathews* factor is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

15

procedural safeguards." *Mathews*, 424 U.S. at 335.   "Procedural due process rules are shaped by the risk of error inherent in the truth-finding process." *Velasco Lopez*, 978 F.3d at 852 (citing *Mathews*, 424 U.S. at 344).  The usual burden at a § 1226(a) bond hearing places the burden on Petitioner to prove two negatives, i.e., that he is *not* a flight risk and *not* a danger to the community, which "can often be more difficult than proving a cause for concern."  *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183-84 (D. Colo. 2024) (quoting *Hernandez-Lara*, 10 F.4th at 31).  Moreover, the ability of a detained non-citizen to obtain evidence for the bond hearing is seriously constrained, especially compared to the "substantial resources" of the government in the form of "computerized access to numerous databases and to information collected by DHS, DOJ, and the FBI, as well as information in the hands of state and local authorities . . . [and] broad regulatory authority to obtain it." *Velasco Lopez*, 978 F.3d at 853.  Thus, the second factor also favors additional procedures that protect Petitioner from the risk of the erroneous deprivation of his liberty, such as shifting the burden of proof to the government.

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  The government has no legitimate governmental interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight[,] [and] . . . shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854.  Moreover, "the administrative burden of a bond hearing is minimal."

16

*Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025).  Shifting the burden at the bond hearing similarly does not "impose an unreasonable administrative or fiscal burden on the Government . . . . The United States has vast resources at its disposal to gather information about Petitioner's eligibility for bond. And requiring the Government to justify detention may actually promote their separate interest in conserving resources and managing overcrowding at ICE detention facilities."  *Requejo Roman*, 2026 WL 125681, at *10.  Thus, the third factor also supports burden shifting at Petitioner's bond hearing.

In being misclassified as subject to detention under § 1225(b)(2)(A), Petitioner has for two months suffered the erroneous deprivation of his ability to seek his liberty through a bond hearing – a due process protection he should have received before or promptly following his detention by ICE.  "[A]s the period of confinement grows, so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention. . . . [I]ndividuals subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing."  *Velasco Lopez*, 978 F.3d at 853-54 (citation modified).  Given the lengthy and ongoing violation of Petitioner's due process rights, shifting the burden of proof to the government at his belated bond hearing is an appropriate correction and protection.

This approach has been followed by multiple district judges in this Circuit.  *See, e.g.*, *Requejo Roman*, 2026 WL 125681, at *10 (Judge Urias finding "the Government's misclassification of Petitioner under § 1225 deprived him of a bond hearing," considering the *Mathews* factors, and concluding that "due process requires that he be provided a bond

17

hearing at which the Government bear the burden of proving that Petitioner is not a flight risk or a danger to the community."); *Mieles-Parraga v. Bondi*, No. 2:26-CV-00646-KG-JHR, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (Chief Judge Gonzales utilizing same analysis); *Lopez-Romero v. Lyons*, No. 2:25-CV-01113-MIS-JHR, 2026 WL 92873, at *1 (D.N.M. Jan. 13, 2026) (Judge Strickland utilizing same analysis); *Abanil v. Baltazar*, No. 25-CV-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (finding that in the District of Colorado, "the weight of authority. . . is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing") (collecting cases); *Peña Becerra v. Sparks*, No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *7 (D. Utah Apr. 3, 2026) (finding petitioner met his burden to show a deprivation of his rights by his unlawful detention, ordering petitioner's release, and ordering that if respondents "seek to re-detain him, they must provide him with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that [he] is a flight risk or danger to the community").

It should be noted that numerous courts have found that burden shifting is appropriate whether or not the petitioner has ever had a previous bond hearing and/or release from detention by ICE. *See, e.g.*, *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-01031-KG-JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (finding when petitioner entered the United States in 2006, and was detained for the first time in September 2025 that "the proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Mr. Pu Sacvin is a flight risk or danger to the community."); *Lopez-Romero*, 2026 WL 92873, at *1 (ordering Respondents to provide a

18

bond hearing and shifting burden to the government when petitioner entered the United States in 2001 and was first detained by ICE in October 2025); *Abanil*, 2026 WL 100587, at *8 (ordering Respondents to provide a bond hearing and shifting burden to the government when petitioner entered the United States in 2010 and was first detained by ICE and placed in removal proceedings in July 2025). For the reasons stated above, and under the specific factual background of this case, the undersigned recommends this Court join these courts and shift the burden of proof to the Government at Petitioner's bond hearing.[6]

### 3. The Government Should Be Required To Establish Flight and/or Dangerousness By Clear and Convincing Evidence.

Having determined the burden should be on the Government to prove risk of flight and danger to the community, the undersigned must determine which standard of proof should apply.

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas*, 441 U.S. 418, 423 (1979) (citation modified). "The Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Velasco Lopez*, 978 F.3d at 856 (citing

---

[6] While the undersigned recommends burden shifting at Petitioner's bond hearing, a *Mathews* analysis may not result in such a recommendation in all cases.

*Addington*, 441 U.S. at 426, 432-33 (upholding the clear and convincing standard for civil confinement of individuals with severe mental illnesses); *Salerno*, 481 U.S. at 751 (noting that pretrial detention is permitted "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identifiable and articulable threat to an individual or the community"); *Foucha v. Louisiana*, 504 U.S. 71, 75-76 (1992) (requiring the same standard for involuntary civil commitment); *United States v. Comstock*, 560 U.S. 126, 130-31 (2010) (noting the same standard in upholding the constitutionality of a federal statute which permits a continued confinement of a mentally ill, sexually dangerous prisoner beyond a date that the prisoner would otherwise be released)).  District courts in this Circuit have adopted the clear-and-convincing-evidence standard when shifting the burden to the government for § 1226(a) bond hearings. *See e.g.*, *Martinez Escobar v. Baltazar*, No. 26-cv-296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026) (collecting cases in District of Colorado imposing clear and convincing standard and imposing same); *Requejo Roman*, 2026 WL 125681, at *10 ("[T]he standard of proof the Government must meet is one of clear and convincing evidence.").

### 4.     Conclusion

Petitioner's due process rights have been violated by his prolonged unlawful detention without a bond hearing.  This Court can implement its flexible habeas jurisdiction to protect him from further erroneous deprivation of his fundamental liberty interest by providing adequate procedural protections.  A bond hearing at which the government bears the burden of proof to establish flight risk and/or dangerousness by clear and convincing evidence is an appropriate remedy.

**VI.   Recommendation and Notice of Right to Object**

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **GRANTED in part**.  The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral Immigration Judge within 7 days of the judgment in this matter, or else release him from custody.  It is recommended that the Court order that at the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention.  The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten days of the Court's order.

**The Court advises the parties of their right to object to this Report and Recommendation by May 8, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[7]  The Court advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[7] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations.  *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

ENTERED this 1st day of May, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE